**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02300-MEH

BRISTOL COUNTY RETIREMENT SYSTEM,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

QURATE RETAIL, INC.,
MICHAEL A. GEORGE,
GREGORY B. MAFFEI, AND
THADDEUS JASTRZEBSKI,

      Defendants.

---

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

---

# TABLE OF CONTENTS

Page

UNOPPOSED MOTION ................................................................................................ 1

PRELIMINARY STATEMENT .................................................................................... 1

HISTORY OF THE LITIGATION ............................................................................... 2

THE PROPOSED SETTLEMENT................................................................................ 4

ARGUMENT ................................................................................................................. 5

I.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 5

     A.    The Settlement Was Fairly and Honestly Negotiated.............................................. 6

     B.    Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome
          of the Litigation in Doubt ..................................................................................... 7

     C.    The Value of the Immediate Recovery Outweighs the Mere Possibility of
          Future Relief After Protracted and Expensive Litigation ..................................... 10

     D.    The Judgment of the Parties that the Settlement Is Fair and Reasonable ............. 12

     E.    The Settlement Treats All Settlement Class Members Fairly.............................. 12

II.     THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED.............. 14

     A.    Standards Applicable to Class Certification ......................................................... 14

     B.    The Settlement Class Meets the Requirements of Rule 23(a) .............................. 14

          1.    Rule 23(a)(1): Numerosity ...................................................................... 14

          2.    Rule 23(a)(2):  Questions of Law or Fact Are Common ......................... 15

          3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ................................ 15

          4.    Rule 23(a)(4):  The Lead Plaintiff Is Adequate ...................................... 16

     C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................ 16

          1.    Common Questions of Law or Fact Predominate.................................... 16

          2.    A Class Action Is a Superior Method of Adjudication ........................... 18

III.     THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED.............18

IV.     PROPOSED SCHEDULE OF EVENTS.........................................................................20

CONCLUSION.................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. U.S.*,
    406 U.S. 128 (1972)........................................................................................17

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
    551 F.2d 804 (10th Cir. 1977) ........................................................................5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................17

*Amgen  Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)........................................................................................17

*Basic v. Levinson*,
    485 U.S. 224 (1988)........................................................................................17

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
    07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)......................................16

*In re Crocs, Inc. Sec. Litig.*,
    No. 07 cv 2351, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) .........................9, 19

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)......................11

*In re Integra Realty Res., Inc.*,
    262 F.3d 1089 (10th Cir. 2001) ........................................................................19

*Kerns v. Spectralink*,
    No. 02-D-263, 2003 U.S. Dist. LEXIS 11711 (D. Colo. July 2003)......................15

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ........................................................................7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02-md-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................18

*Nakkhumpun v. Taylor*,
  No. 12-cv-0138-CMA, 2015 WL 6689399 (D. Colo. Nov. 3, 2015) .......................5, 7, 14, 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................................11

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*
  396 F. Supp. 2d 1178 (D. Colo. 2004)......................................................................................8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ..........................................................................................6, 16

*Schwartz v. Celestial Seasonings, Inc.*,
  178 F.R.D. 545 (D. Colo. 1998) .......................................................................................15, 16

*Trevizo v. Adams*,
  455 F.3d 1155 (10th Cir. 2006) ...............................................................................................14

*Tuten v. United Airlines Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014)........................................................................................5

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..................................................................................................................12

15 U.S.C. §78u-4(a)(7)(A)-(F)......................................................................................................19

**Rules**

Fed. R. Civ. P.  23 .................................................................................................................1, 6, 19

Fed. R. Civ. P. 23(a).......................................................................................................................14

Fed. R. Civ. P. 23(a)(1)..................................................................................................................14

Fed. R. Civ. P. 23(a)(2)..................................................................................................................15

Fed. R. Civ. P. 23(a)(3)..................................................................................................................15

Fed. R. Civ. P. 23(a)(4)..................................................................................................................16

Fed. R. Civ. P. 23(b)(3)......................................................................................................16, 17, 18

Fed. R. Civ. P. 23(b)(3)(A)-(D).....................................................................................................18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................18

Fed. R. Civ. P. 23(e) .................................................................................................2, 14

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................5

Fed. R. Civ. P. 23(e)(2)......................................................................................................5

Fed. R. Civ. P. 23(f)............................................................................................................9

**Other Authority**

Newberg on Class Actions (5th ed. 2015) ..........................................................................5

## UNOPPOSED MOTION

Lead Plaintiff Indiana Public Retirement System ("Indiana" or "Lead Plaintiff"), on behalf of itself and all other members of the proposed Settlement Class, respectfully submits this unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), which is filed with this motion.[1]

The proposed Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iii) approve the procedures for distribution of the Notice, Claim Form, and the Summary Notice; and (iv) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for distributing the proceeds of the Settlement, and Lead Counsel's application for attorneys' fees and expenses. Pursuant to Local Rule 7.1(a), Lead Counsel has conferred with counsel for the Defendants and they do not oppose the relief requested by this motion.

## PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action (the "Action") for a total of $5,750,000 in cash (the "Settlement") that, if approved by the Court, will resolve all claims asserted against Defendants in the Action and related claims. Lead Plaintiff

---

[1] All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation and Agreement of Settlement, dated May 31, 2019 (the "Stipulation"), filed herewith as Exhibit 1 to the Declaration of Jonathan Gardner ("Gardner Decl."). All exhibits referenced below are attached to the Gardner Declaration.

now requests that the Court preliminarily approve the proposed Settlement.  As explained below, Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls well within the range of approval, and is very likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e)(as amended) and Tenth Circuit precedent.  Preliminary approval is therefore appropriate.

Entry of the proposed Preliminary Approval Order will begin the process of considering final approval of the Settlement by authorizing notice of the Settlement to members of the Settlement Class.  A final Settlement Hearing will then be conducted, after the Settlement Class has been given an opportunity to object or seek exclusion, so that the Court can make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## HISTORY OF THE LITIGATION

Qurate owns interests in subsidiaries and other companies that are primarily engaged in the video and online commerce industries, including the sale of products through live merchandise-focused televised shopping programs, websites, and mobile applications.[2]  As alleged in the Complaint, QVC, Inc. ("QVC") is Qurate's largest wholly owned subsidiary reaching approximately 23 million customers.  QVC offered a payment plan called "Easy Pay" to customers, which allowed them to buy on credit through a series of installment payments.

Lead Plaintiff alleges that during the Class Period, Defendants made materially false and misleading statements and omissions regarding QVC's use of Easy Pay.  As alleged in the

---

[2] As detailed in Qurate's Form 10-K for the year ending December 31, 2018, during the Class Period the businesses comprising QVC Group, including QVC, Inc., were owned by Liberty Interactive Corporation.  In March 2018, QVC Group was rebranded as Qurate Retail Group, and in April 2018 Liberty Interactive was renamed Qurate.

Complaint, facing declining sales in the first half of 2015, QVC allegedly increased the use of Easy Pay, expanding both the number and type of products on which it offered Easy Pay; added lower-priced products to Easy Pay; and relaxed rules regarding Easy Pay installment payments. These actions were allegedly done to inflate QVC's sales and to allow QVC executives to meet their 2015 performance bonus targets.   The Complaint further alleges that when the truth regarding QVC's sales, the expansion of the Easy Pay program, and the resulting increase in QVC's bad debt rate, were allegedly disclosed to the market, the price of QVC Stock declined causing damages to the proposed class.

The Action was commenced with the filing of a complaint on September 6, 2018.  ECF No. 1.  Following briefing, and pursuant to the PSLRA, the Court entered an Order on November 26, 2018 appointing Indiana as Lead Plaintiff and approving its selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel.   ECF No. 28.   The operative complaint in the Action is the Amended Class Action Complaint for Violation of Federal Securities Laws ("Complaint").  ECF No. 42.

Lead Plaintiff, through Lead Counsel, has conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action, as set forth below.   Lead Plaintiff's process, through Lead Counsel, included reviewing and analyzing: (i) documents filed publicly with the SEC; (ii) publicly available information, including press releases, news articles, financial information, and public statements issued by or concerning QVC Group, Liberty Interactive Corporation, Qurate, and the Defendants; (iii) research reports issued by financial analysts; (iv) other publicly available information and data concerning QVC Group, Liberty Interactive Corporation, Qurate, and the Defendants;

(v) the applicable law governing the claims and potential defenses in the Action; and (vi) core documents, exceeding 3,000 pages, provided by Defendants in connection with mediation efforts.  Lead Counsel also identified approximately 130 former employees and other persons with relevant knowledge and interviewed 27 of them.  In addition, Lead Plaintiff engaged a forensic accounting expert who conducted an accounting analysis regarding certain financial elements of Lead Plaintiff's claims.  Lead Plaintiff also engaged a well-respected economist to review Lead Plaintiff's claims and conduct an analysis.

## THE PROPOSED SETTLEMENT

To explore the possibility of a negotiated resolution of the claims in the Action, the Parties engaged Michelle M. Yoshida, Esq., a well-respected and highly experienced mediator. The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation statements as well as Qurate's production of more than 3,000 pages of core documents.  On March 25, 2019, Lead Plaintiff, Lead Counsel, and counsel for the Defendants met with Ms. Yoshida in an attempt to reach a settlement; however a settlement was not reached. Thereafter, the Parties engaged in additional arm's-length negotiations, both directly and facilitated by Ms. Yoshida, and ultimately accepted the mediator's proposal for a settlement on April 5, 2019, and executed a settlement term sheet on April 16, 2019.  The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement.[3]

---

[3] The Parties have also entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, dated May 31, 2019.  *See* Stipulation ¶ 40.  The Supplemental Agreement sets forth the conditions under which Qurate may terminate the Settlement in the event that requests for exclusion exceed a certain amount (the "Termination Threshold").  As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Termination Threshold to exact an individual settlement.  Pursuant to its terms, the Supplemental Agreement may be

**ARGUMENT**

**I.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

Courts have long recognized a strong public policy and presumption favoring settlements. *See, e.g., Am. Home Assurance Co. v. Cessna Aircraft Co.,* 551 F.2d 804, 808 (10th Cir. 1977) (noting that "[t]he inveterate policy of the law is to encourage promote, and sustain the compromise and settlement of disputed claims").[4] This policy has even more force in complex class actions such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

District court review of a class action settlement proposal is a two-step process.  Newberg on Class Actions §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id*. at §13:13.  In the first step, the Court makes a preliminary evaluation of fairness before directing that notice be given to the class.  *See Nakkhumpun v. Taylor*, No. 12-cv-0138-CMA, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015) ("At the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object … or opt out.").  Effective December 1, 2018, Rule 23(e)(1)(B) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify the class.[5]

---

submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

[4] All citations and internal quotations are omitted, unless otherwise noted.

[5] In connection with final approval of the Settlement, the Court will be asked to review the following core factors identified by amended Rule 23(e)(2), whether: (a) Lead Plaintiff and Lead

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, this Settlement is more than likely to meet all of the factors required for final approval and, therefore, warrants preliminary approval.

### A.   The Settlement Was Fairly and Honestly Negotiated

The Settlement was fairly and honestly negotiated by vigorous advocates for the Settlement Class, namely Lead Plaintiff and Lead Counsel.  As noted above, the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law, including securities fraud class actions under the Securities Exchange Act.

Moreover, the Parties reached the Settlement following a rigorous investigation of the merits, and after consulting with experts.  As noted above, Lead Plaintiff conducted a thorough investigation prior to filing the Complaint, which included interviews with 27 former employees and other persons with relevant knowledge.  Additionally, Lead Plaintiff consulted with experts on damages, loss causation, and forensic accounting issues.  As a result, Lead Plaintiff and Lead Counsel had a well-grounded basis for assessing the strengths and weakness of the Settlement Class's claims and Defendants' defenses when they agreed to settle the Action.

During these efforts, the Settlement Class was well-represented by Lead Plaintiff Indiana

---

Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably relative to each other.  In assessing these core factors, the Court may also consider the Tenth Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors:  (1) whether the settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the outcome of the litigation in doubt; (3) whether an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Public Retirement System, a very sophisticated institutional investor that offers pension, retirement plans, and various other benefits to its participants. *See* Complaint at ¶ 25. Indiana serves the needs of approximately 467,000 members and retirees representing more than 1,200 employers, including public universities, school corporations, municipalities, and state agencies throughout the state of Indiana. *Id*. Indiana is a sophisticated institutional investor that had $34.2 billion in assets under management at fiscal year-end 2018. *Id*.

Additionally, Labaton Sucharow is among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases. *See* Ex. 2; *see, e.g.*, *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec. Litig.*, No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery).

Accordingly, the Settlement is a product of informed, fair, and honest negotiations among sophisticated parties and experienced counsel, following an extensive investigation, and is deserving of preliminary approval. *See, e.g., Nakkhumpun,* 2015 WL 6689399, at *6 (preliminarily finding the settlement fair where the parties conducted a factual investigation and thorough analysis, consulted with experts, and engaged in mediation, among other things).

**B.      Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt**

In assessing the Settlement, the Court should balance the benefits of the certain recovery for the class against the risks of continued litigation. *See Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006). Defendants have agreed to settle this Action for $5,750,000, which presents a favorable recovery when considering the risks of further litigation. Although Lead Plaintiff believes its claims have merit, had litigation continued, Defendants would have moved

to dismiss the Complaint, arguing, among other things, that there are no materially false or misleading statements, Defendants did not act with scienter, Lead Plaintiff could not establish loss causation, and that the Action was barred by the applicable statute of limitations.  If Defendants were successful on any of these grounds, a lengthy appeal could have ensued, with no certainty of any recovery for the class.

Regarding the falsity and materiality of the alleged misstatements, Defendants would likely have contended that QVC's use of the Easy Pay program and its risks were well known. Defendants would have further argued that even if Easy Pay was an important sales driver, as Lead Plaintiff alleges, that does not render misleading the Company's discussion of other aspects of its business that it also considered significant. Defendants would have also argued that many of the challenged statements about customer and revenue growth are nothing more than inactionable puffery.

Defendants would have also argued, in moving to dismiss the Complaint, that Lead Plaintiff did not plead a strong inference of scienter. Among other things, Defendants would argue that the Complaint does not show how sales by the Individual Defendants were out of line with their past practices, or suspiciously timed.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig*. 396 F. Supp. 2d 1178, 1195 (D. Colo. 2004) ("[P]laintiffs must alleged that the trades were made at times and in quantities that are suspicious enough to support the necessary strong inference of scienter."). In particular, the Individual Defendants would likely argue that they held substantial positions in QVC Stock and did not offload stock during the Class Period, and that any sales were explained by tax withholding or the expiration of options.

Regarding loss causation, Defendants would have likely argued that the alleged price

drops cannot be linked to any disclosure or any alleged increased use of Easy Pay. Defendants would argue that the stock price declined on August 5 and September 8, 2016 due to the announcement of a sales slowdown caused by multiple factors (i.e., challenges in QVC's apparel, accessories, jewelry, electronics, and beauty segments) and not the alleged misrepresentations regarding the increased use of Easy Pay.  Further, Defendants would have argued that the September 8, 2016 disclosure did not provide any new information and only confirmed that a risk identified in August had materialized.  Another challenge was Defendants' likely argument that the claims are barred by the statute of limitations because the first of the two alleged partial disclosures (August 5, 2016) is outside the two year statute of limitations.

Even if Lead Plaintiff prevailed on Defendants' motion to dismiss, there is no doubt that Defendants would move for summary judgment following discovery, arguing, among other things, that there is no evidence that there was anything unusual about Easy Pay, or how QVC estimated and accounted for bad debt.  In particular, Defendants would argue that Lead Plaintiff would not be able to prove that anyone in 2015, or the first quarter in 2016, believed the bad debt expense estimated for the fourth quarter of 2015 would later prove insufficient.

In order to succeed, Lead Plaintiff would have had to prevail at multiple additional stages in the litigation – in connection with a class certification motion (and in a likely petition pursuant to Rule 23(f) even once certified), a motion for summary judgment, at trial, and in inevitable appeals.  At each of these stages, there would be significant risks, and there was no guarantee of a recovery greater than the Settlement Amount, or a recovery at all.  *See, e.g., In re Crocs, Inc. Sec. Litig.,* No. 07 cv 2351, 2013 WL 4547404, at *11 (D. Colo. Aug. 28, 2013) (finding the second factor weighs in favor of preliminary approval where plaintiffs had to consider their

likelihood of success certifying a class, surviving summary judgment, and winning at trial).

    **C.**    **The Value of the Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation**

Lead Plaintiff's damages expert has estimated that if liability were established with respect to all of the claims throughout the Class Period, maximum aggregate damages recoverable at trial, based on non-disaggregated stock price declines on both alleged disclosures dates, and removing pre-Class Period gains, would exceed several hundred million dollars. However, a more likely maximum estimate factors in a need to disaggregate, or parse out, confounding non-fraud related information.

Defendants would likely put forth credible arguments and evidence showing that a significant portion of the price declines resulted from forces unrelated to the alleged fraud. Lead Plaintiff's consulting damages expert performed a preliminary disaggregation analysis to remove the effects of potentially confounding information from the strongest alleged corrective disclosure, which occurred on August 5, 2016. This analysis estimates maximum damages of approximately $70 million. Accordingly, the Settlement recovers approximately 8% of this estimate of disaggregated damages. Further, if Defendants proved that confounding information had not been properly disaggregated, damages would be even further reduced.

In addition, had the case proceeded, Defendants would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds that Lead Plaintiff could not sufficiently link each to Defendants' alleged fraud, *i.e.,* they were not corrective at all. For instance, Defendants would likely have argued that the increase in bad debt from the Easy Pay program announced on August 5, 2016 was insignificant compared to the Company's overall revenue, and that the stock price declines following disclosures about Easy Pay were therefore

caused by other issues.  Moreover, Defendants would likely have argued that when the Company allegedly disclosed that QVC announced increased write-off rates associated with the Easy Pay program and acknowledged higher default rates associated with these sales, on September 8, 2016, these statements did not correct any prior statements but merely reiterated information that was disclosed in August.  If these arguments prevailed at summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.  The Settlement avoids all of these risks and achieves a prompt and substantial recovery without the need for prolonged and uncertain litigation.

Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages. *See, e.g., In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* No. 02-md-1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving settlement representing 6.25% of estimated damages and noting it was at the "higher end of the range of reasonableness of recovery in class actions securities litigations").

### D.      The Judgment of the Parties that the Settlement Is Fair and Reasonable

As noted above, Settlement Class Members have been well represented by an informed Lead Plaintiff and counsel experienced in securities litigation. *See* Section I.A. This factor weighs in favor of granting preliminary approval.

### E.      The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Settlement Class.[6] Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to a Plan of Allocation approved by the Court.

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for the Net Settlement Fund, which is set forth in full in the Notice and was prepared by Lead Counsel with the assistance of a consulting damages expert. Here, the proposed Plan of Allocation is based on Lead Plaintiff's allegations that the price of QVC Stock was artificially inflated during the Class Period as a result of Defendants' alleged materially false and misleading statements and omissions, and that the inflation was removed in reaction to two public disclosures. The Plan of Allocation is designed to equitably distribute the Settlement proceeds among the members of the Settlement Class who were allegedly injured and who submit valid Claim Forms. The Plan provides for the calculation of a "Recognized Loss"

---

[6] In connection with the motion for an award of attorneys' fees and expenses, Lead Plaintiff may seek reimbursement of its costs and expenses (including lost wages) related to its participation. Such reimbursement is explicitly allowed by the PSLRA and would not be preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4). Moreover, the Settlement also does not grant excessive compensation to Lead Counsel. As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for fees and expenses. The Settlement does not contemplate any specific award to Lead Counsel and Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and not by Defendants.

amount for each documented purchase of QVC Stock during the Class Period.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or for large investors with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims process is required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

Once the Claims Administrator has processed all claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants. After an initial distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. *See* Stipulation ¶ 26. Any balance that still remains that is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be donated to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court. *Id.*

## II.     THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

### A.     Standards Applicable to Class Certification

At the Settlement Hearing, the Court will be asked to grant final approval of the Settlement on behalf of the Settlement Class, which is defined as "all persons and entities that purchased or otherwise acquired QVC Stock during the period from August 5, 2015 through September 8, 2016, inclusive, and were allegedly damaged thereby, as will be determined by the Plan of Allocation approved by the Court," excluding those expressly identified in ¶ 1(jj) of the Stipulation.   For that reason, and pursuant to the recent amendments to Rule 23(e), it is appropriate for the Court to consider, at the preliminary approval stage, whether certification of the Settlement Class is appropriate.

### B.     The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.     Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).   "Plaintiffs must offer 'some evidence of established, ascertainable numbers constituting the class', but there is 'no set formula to determine if the class is so numerous that it should be so certified.'"   *Nakkhumpun*, 2015 WL 6689399, at *4 (quoting *Colo. Cross-Disability Coal v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014)).

Here, there can be no dispute that the Settlement Class satisfies numerosity.   Throughout the Class Period, QVC Stock was actively traded on the NASDAQ Global Select Market.   As of the Company's Report on Form 10-Q for the quarter ended June 30, 2016, QVC Group had 446,645,121 shares of Series A shares outstanding owned by thousands of persons.   *See*

Complaint at ¶ 202.  Thus, there are likely thousands of class members. *See Kerns v. Spectralink,* No. 02-D-263, 2003 U.S. Dist. LEXIS 11711, at *4-5 (D. Colo. July 2003) (certifying class and determining numerosity established where 19 million shares were held during the class period).

### 2.    Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement asks only that the Lead Plaintiff demonstrate that the class members have 'suffered the same injury' such that the claims are based on a common contention and that the determination of the truth or falsity of this contention will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (internal quotations omitted). "The claims of the class members need not be identical. . . ." *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D. Colo. 1998).

In this case, the central questions–whether Defendants' public statements during the Class Period regarding Qurate sales growth and the use of Easy Pay were false and misleading, whether Defendants acted with the requisite mental state, and whether the prices of QVC Stock were artificially inflated–are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representative arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are "based on the same legal theory". *See Nakkhumpun*, 2015 WL 6689399, at *4 (quoting *DG ex. rel. Stricklin v. Devaugh*, 594 F.3d 1188, 118-995 (10th Cir. 2010). "[S]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied." *Schwartz,*

178 F.R.D. at 551. Here, Lead Plaintiff's claims are typical of those of the other Settlement Class Members.  Like all Settlement Class Members, Lead Plaintiff purchased QVC Stock during the Class Period and claims to have suffered damages.

### 4.      Rule 23(a)(4):  The Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutte*, 314 F.3d at 1187-88.

Here, there is no antagonism or conflict between Lead Plaintiff and the proposed Settlement Class. Lead Plaintiff and Settlement Class Members share the common objective of maximizing their recovery from Defendants when considering the totality of the relevant circumstances.  Lead Plaintiff and Lead Counsel have vigorously protected the interests of the Settlement Class.  Lead Counsel is well qualified and able to conduct the Action and has ably represented Lead Plaintiff and the proposed Settlement Class throughout the Action. [7]

### C.      The Settlement Class Meets the Requirements of Rule 23(b)(3)

### 1.      Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes

---

[7] *See* firm resume (Ex. 2); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 07-Civ-10453, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (stating that Labaton Sucharow has "substantial experience in the prosecution of shareholder and securities class actions").

are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In evaluating predominance, the Court's inquiry "must be 'rigorous' and may 'entail some overlap with the merits of the [P]laintiffs' underlying claim,'" but the Court may not "engage in free-ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).  In this case, as is generally so in securities class actions, each element of Lead Plaintiff's 10(b) claim involves common questions of law and fact that predominate over individualized issues.

Here, Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (i.e., through public statements made to the market and documents publicly filed with the SEC).  Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen*, 568 U.S. at 467. The same is the case for loss causation, scienter, and falsity.

Lead Plaintiff contends that reliance is established through the application of *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because claims asserted against Defendants are predicated upon omissions of material fact, which there was a duty to disclose, or the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988). Application of *Affiliated Ute* or *Basic* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions.  *See id*. at 241-42.  In order to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient."  *Id*. at 248.  Here, where QVC Stock is traded on the NASDAQ Global Select Market and was followed by numerous securities analysts and traded at regular

substantial volumes, there is sufficient evidence of market efficiency.

### 2.    A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that a class action be superior to other available methods for the adjudication of the controversy.  The rule lists several matters pertinent to this finding: (A) class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  Each factor weighs in favor of superiority here.  Lead Counsel is not aware of any individual class member interested in bringing its own action against Defendants.  Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement.  Certification of a class will allow the Settlement to be administered in an organized and efficient manner.

## III.    THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, satisfy due process, the federal rules and the PSLRA.  Rule 23(c)(2)(B) requires notice of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied if the notice provides the "best notice practicable" [] "under the circumstances including individual notice to all members who can be identified through

reasonable effort." *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001).

Collectively, the proposed forms of notice describe, *inter alia*, (i) the terms of the Settlement; (ii) the considerations that lead to the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds; and (vii) the date, time and place of the Settlement Hearing. *See In re Crocs, Inc. Sec. Litig.,* 2013 WL 4547404, at *13 (approving notice).  The Notice also satisfies the PSLRA's separate notice requirements.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" in securities cases: individual notice by mail, publication in a newspaper focused on investors, and internet dissemination. Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to all Settlement Class Members who can be identified and located through reasonable effort, using information provided by Qurate's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers who may have eligible purchases.  In addition, the Notice and Claim Form will be available for viewing and downloading on the Claims Administrator's website and Lead Counsel's website.  This manner of providing notice represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *In re Crocs, Inc. Sec, Litig.,* 2013 WL 4547404, at *13 (finding notice by publication and mail was appropriate).

Lead Plaintiff also requests that the Court appoint Strategic Claims Services ("SCS") as the Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement. SCS is a nationally

recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. *See* Gardner Decl. Ex. 3.

## IV.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff respectfully proposes the following schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Approval Order.

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms (the "Notice Date") | *12 business days after entry of Preliminary Approval Order.* |
| Deadline for publication in *Investor's Business Daily* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for submission of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers in support of the motions | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 100 calendar days after the entry of the Preliminary Approval Order.* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 120 calendar days after the Notice Date.* |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Settlement Class Members; (iii) appoint SCS as Claims Administrator; and (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant

such other and further relief as may be required.

Dated: May 31, 2019                              By: */s/ Jonathan Gardner*

**LABATON SUCHAROW LLP**
Jonathan Gardner
Christine M. Fox
Theodore J. Hawkins
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email:  jgardner@labaton.com
cfox@labaton.com
thawkins@labaton.com

*Lead Counsel for Lead Plaintiff and the
Proposed Class*

**THE SHUMAN LAW FIRM**
Rusty E. Glenn
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
Email: rusty@shumanlawfirm.com

*Local Counsel for Lead Plaintiff and the
Proposed Class*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Malcolm T. Brown
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4714
Facsimile: (212) 686-0114
Email: brown@whafh.com

*Additional Counsel for Lead Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2019, I electronically filed the above Lead Plaintiff's

Unopposed Motion and Supporting Memorandum of Law for Preliminary Approval of Class

Action Settlement, including all Exhibits thereto, using the Court's CM/ECF system, which will

be sent electronically to the registered participants as identified on the attached Electronic Mail

Notice List.

*/s/ Jonathan Gardner*
Jonathan Gardner

## I.     Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Guillaume Buell**
  gbuell@tenlaw.com,gbradley@tenlaw.com,jmurphy@tenlaw.com,8927635420@filings.docketbird.com
- **Matthew W. Close**
  mclose@omm.com,rely@omm.com,samanthamiller@omm.com,nymao.cwl@gmail.com,mleu@omm.com,brogers@omm.com
- **Karen Jean Cody-Hopkins**
  karen@codyhopkinslaw.com
- **Nicholas Martin DeWeese**
  ndeweese@shermanhoward.com,prendoff@shermanhoward.com,efiling@sah.com
- **Christine Marie Fox**
  cfox@labaton.com,kgutierrez@labaton.com,6312349420@filings.docketbird.com,electroniccasefiling@labaton.com
- **Jonathan Gardner**
  JGardner@labaton.com,kgutierrez@labaton.com,4027988420@filings.docketbird.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com
- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com
- **Theodore J. Hawkins**
  THawkins@labaton.com,kgutierrez@labaton.com,5957819420@filings.docketbird.com,electroniccasefiling@labaton.com
- **Francis Paul McConville**
  FMcConville@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,ElectronicCaseFiling@labaton.com
- **Ivy Tran Ngo**
  ngoi@fdazar.com,chateauneufs@fdazar.com,footec@fdazar.com
- **Abby Faith Rudzin**
  arudzin@omm.com
- **Stefan D. Stein**
  sstein@shermanhoward.com,madams@shermanhoward.com,efiling@shermanhoward.com

## II.     Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)